J-S73018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRICK HOWARD BURNSIDE | : | |
| | : | |
| Appellant | : | No. 806 MDA 2019 |

Appeal from the PCRA Order Entered April 16, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004381-2003

BEFORE: SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 13, 2020**

Derrick Howard Burnside appeals from the order, entered in the Court of Common Pleas of Lancaster County, denying his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After our review, we affirm.

On December 22, 1998, Burnside and a co-conspirator, Eddie Vasquez, set the victim, James Bell, on fire. Testimony at trial indicated that the victim had been doused with lighter fluid before being set on fire. Testing of Bell's clothing also suggested the presence of an accelerant. It was unclear from the testimony who physically set Bell on fire and, due to complications from his burns, which covered 18-20% of his body, Bell died on January 30, 1999 at Crozier Chester Medical Center. The manner of death was listed as homicide. *See Commonwealth v. Burnside*, No. 1198 MDA 2004, at 2 (Pa. Super. filed December 14, 2005) (Unpublished Memorandum).

On June 10, 2004, a jury convicted Burnside of second-degree murder, arson, recklessly endangering another person, and two counts of criminal conspiracy. On July 14, 2004, the court sentenced Burnside to life imprisonment for second-degree murder. The court also sentenced Burnside to concurrent terms of twenty (20) to forty (40) years' imprisonment for conspiracy to commit murder, four (4) to twenty (20) years' imprisonment for arson, and three (3) to twenty-three (23) years' imprisonment for conspiracy to commit arson. This Court affirmed the judgment of sentence on December 14, 2005. *See id*. Burnside filed a petition for allowance of appeal, which our Supreme Court granted in part on September 14, 2006. *Commonwealth v. Burnside*, 908 A.2d 269 (Pa. 2006). On June 8, 2007, the appeal was dismissed as improvidently granted. *Commonwealth v. Burnside*, 926 A.2d 428 (Pa. 2007).

On May 13, 2008, Burnside filed his first PCRA petition, challenging trial counsel's effectiveness. The PCRA court denied that petition and, on appeal, this Court affirmed the convictions, but vacated and remanded for resentencing. *See Commonwealth v. Fortune*, 451 A.2d 729 (Pa. Super. 1982) (holding felony murder and predicate offense merge for sentencing purposes).

On March 30, 2015, Burnside filed the instant *pro se* petition. The PCRA court appointed counsel, who filed an amended petition and a second

amended petition on June 10, 2016.[1]  The Commonwealth filed responses.

The PCRA court held a status conference, set a briefing schedule and held

hearings on December 9, 2016 and on February 2, 2017.

At the February 2, 2017 hearing, the Commonwealth introduced two

letters written by recanting witness Michael Gantz (the Gantz letters).  Gantz

sent those letters, dated September 29, 2003, and December 15, 2003, to

Assistant District Attorney Todd Brown, prior to Burnside's trial, seeking

leniency in pending charges.  Burnside argued those letters were not provided

in discovery and they supported Gantz's recantation testimony, suggesting

that Gantz lied at trial in return for favorable treatment with respect to his

own pending charges.  At the conclusion of that hearing, Burnside sought, and

the court granted, additional time to review the exhibits and to determine

whether they constituted **Brady**[2] material.  **See** Supplemental Amended PCRA

Petition, 3/31/17, at ¶¶ 27-32.

_____

[1] **See** Pa.R.Crim.P. 904(D) ("On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required as provided in Rule 908, the judge shall appoint counsel to represent the defendant.").

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).  Under **Brady** and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature.  **See**, **e.g.**, **Commonwealth v. Hutchinson**, 25 A.3d 277, 310 (Pa. 2011).  To establish a **Brady** violation, an appellant must prove three elements:  (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.  **Hutchinson**, **supra**.

As the PCRA court notes, and Burnside concedes, the instant petition is untimely on its face. Burnside, however, invokes the newly discovered facts exception. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii) (petitioner alleges and proves facts upon which claim is predicated were unknown and could not have been ascertained by exercise of due diligence). Specifically, his filings were based on alleged recantations of testimony from three trial witnesses, including Michael Gantz. Burnside attached affidavits to his petitions, and claims he has met the requirements of section 9545(b)(2), which requires a petitioner asserting a timeliness exception to file a petition within 60 days of the date the claim could have been presented.[3]

The PCRA court determined Burnside's petitions fell within the newly discovered evidence exception. 42 Pa.C.S.A. § 9545(b)(1)(ii). Burnside became aware of Gantz's recantation statement on April 14, 2016; his second amended PCRA petition was filed within 60 days, on June 10, 2016. The court addressed the merits of Burnside's claim and concluded the recantations were coerced and not credible. The PCRA court, therefore, found Burnside's after-discovered evidence claim meritless and, thus, ineligible for relief under section 9543(a)(2)(vi) (unavailability at time of trial of exculpatory evidence

---

[3] On October 24, 2018, the General Assembly amended section 9545(b)(2), extending the time for filing a petition from 60 days to one year from the date the claim could have been presented. Section 3 of Act 2018, Oct. 24, P.L. 894, No. 146, effective in 60 days [Dec. 24, 2018] provides that the amendment of subsection (b)(2) by that Act shall apply to claims arising on Dec. 24, 2017 or thereafter.

that has subsequently become available and would have changed outcome of

trial if it had been introduced).[4]  This appeal followed.

_____

[4] This Court has previously explained the interplay between the newly discovered facts exception to the timeliness requirements and a substantive collateral claim of after-discovered evidence as follows:

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.
>
> The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, inter alia, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at
>
>> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and

Burnside raises the following issues for our review:

1. At [Burnside's] trial, a prisoner and Commonwealth witness testified that he heard [Burnside] confess to murder. At [his] PCRA hearing, the Commonwealth revealed that the prisoner and now-recanting witness [Michael Gantz] wrote to the trial prosecutor, requested a benefit, and received that benefit. Did the PCRA court err when it held that the Commonwealth's failure to disclose [the Gantz letters] could not have affected the outcome of trial?

2. After the same PCRA hearing, [Burnside] requested discovery of any correspondence between the trial prosecutors and the witnesses. The PCRA court did not rule on the discovery request. Was its *de facto* denial improper?

Appellant's Brief, at 4.

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. ***Commonwealth v. Smith***, 181 A.3d 1168, 1174 (Pa. Super. 2018). Generally, we are bound by a PCRA court's credibility determinations, but with regard to a court's legal conclusions, we apply a *de novo* standard. ***Id.*** However, we first address the timeliness of Burnside's petition, as timeliness is a jurisdictional requisite and may not be altered or disregarded in order to

proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered evidence claim.

***Commonwealth v. Brown***, 111 A.3d 171, 176–177 (Pa. Super. 2015) (some citations and quotation marks omitted, emphases omitted), *appeal denied*, 125 A.3d 1197 (Pa. 2015).

address the merits of a petition.   **See Commonwealth v. Bennett**, 930 A.2d 1264, 1267 (Pa. 2007); **see also Commonwealth v. Gamboa–Taylor**, 753 A.2d 780, 783 (Pa. 2000) ("[W]hen a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the [PCRA] court has no power to address the substantive merits of a petitioner's PCRA claims.").

Here, Burnside's claims of newly-discovered evidence relate to the recantation of trial testimony.[5]  Burnside became aware of Gantz's recantation statement on April 14, 2016 and filed his second amended petition within 60 days, on June 10, 2016.  We agree with the PCRA court's determination that Burnside has pled and proven the newly-discovered evidence exception.  **See** 42 Pa.C.S.A. § 9545(b)(1)(ii) (facts upon which claim is predicated were unknown to petitioner and could not have been ascertained by exercise of due diligence); 42 Pa.C.S.A. § 9545(b)(2).

In his petition, Burnside argues his conviction resulted from "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."   **See** Supplemental Amended PCRA Petition, **supra** at ¶

---

[5] Although Burnside raised the recantation testimony with respect to three witnesses, we confine our review to one witness, Michael Gantz, as Burnside has abandoned his claims with respect to the other two witnesses. **See** Appellant's Brief, at 4.

- 7 -

33.    Burnside claims that Gantz testified against him at trial in return for a favor from the assistant district attorney with respect to Gantz's probation violations.  He claims the Gantz letters support this argument and the PCRA court erred in concluding the Commonwealth's failure to disclose the letters could not have affected the outcome of his trial.  We disagree.

In the first letter, dated September 29, 2003, Gantz requests a "walk-in" status on a parole/probation violation.  Gantz discussed his probation violation that resulted from a new charge, just as he had testified at trial.  ***See*** N.T. PCRA Hearing, 2/2/17, at 11-12; N.T. Trial, 6/7/04, at 185-86.  The letter was admitted as Exhibit 6 and read into the record at the February 2, 2017 PCRA hearing. It provides, in relevant part:

> I'm not asking for much.  I was wondering if I can please get walk-in  PV.  The reason why is my wife needs my help really bad with my kids and with her moving, she needs help financially.  And I have–and I do have a job. . .  All I'm asking is can I have a chance, please, to come home and work, work, take care of my kids, and you now that I will show up for trial and I won't give yous [sic] any problems about testifying.

 N.T. PCRA Hearing, 2/2/17, at 10-12.

In the second letter, dated December 15, 2003, Gantz asks for house arrest and a "walk-in" status on a parole/probation violation.  That letter, admitted as Exhibit 7, was read into the record at the February 2, 2017 PCRA hearing.  It provides, in relevant part:

> Todd, I'm very sorry.  I screwed up again.  But I only had one dirty urine[], a trace, plus I admitted to my PO that I was dirty, but I didn't get any new charges.  I did show up for my court hearings.  Regardless, if you help me, and if you help me through

this or not I will still testify for you. All I'm asking is if I can get house arrest and walk-in PV but be on monitor until my hearing.

*Id*. at 12.

As the Commonwealth points out, at Burnside's trial Gantz was cross-examined extensively with respect to his testimony regarding his prior and pending criminal matters, and as to whether he had been offered or given anything by the Commonwealth for his cooperation. **See** N.T. Trial, 6/7/04, at 202-05. In fact, at trial, in response to whether he expected anything after he testified, Gantz stated:

A: Well, the only thing I would like is for the courts to give me a little leniency, you know, for me testifying in this case.

Q: And when you talk about leniency, you're referencing that open charge you still have right now?

A: Right, exactly.

*Id.* at 193. On re-direct, Gantz repeated that the prosecutor did nothing to assist him in obtaining "walk-in" status for his probation violations. *Id.* at 207-08, 210.

Under **Brady** and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, *including evidence of an impeachment nature*. **See, e.g.**, **Commonwealth v. Hutchinson**, 25 A.3d 277, 310 (Pa. 2011). To establish a **Brady** violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the

prosecution, either willfully or inadvertently; and (3) prejudice ensued. ***Hutchinson***, ***supra***.

Here, the trial court assumed, for the sake of argument, the Gantz letters were favorable to Burnside. However, even if suppressed willfully or inadvertently, Burnside suffered no prejudice. The PCRA court determined Michael Gantz's recantation was not credible because it was the result of interference by Burnside's mother. ***See*** N.T. PCRA Hearing, 12/9/16, at 41. Despite Gantz's denial of having received money for his statement, Detective Andrew Morgan's testimony refuted that, recounting a recorded prison phone call between Burnside and his mother wherein Burnside's mother acknowledged that she had "loaned" Gantz money prior to the PCRA proceeding. ***See id.*** at 102-103. Further, as brought out on cross-examination, Gantz's criminal history included multiple crimes of dishonesty: retail theft, theft by unlawful taking, receiving stolen property, forgery and unsworn falsification to law enforcement authorities. ***See id.*** at 32-34. ***See also Smith***, ***supra*** (this Court is bound by the PCRA court's credibility determinations). Finally, and most critical to our ***Brady*** analysis, the letters illustrate nothing different than what was brought out at trial. We conclude, therefore, that the trial court correctly determined that the recantation evidence would not have altered the outcome of the trial, ***Hutchinson***, ***supra***, and Burnside is not entitled to relief.

Order affirmed

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/13/2020</u>